215 F.2d 818
 H. P. COFFEE COMPANY
v.
RECONSTRUCTION FINANCE CORPORATION.
 No. 667.
 United States Emergency Court of Appeals.
 Heard at St. Louis, Missouri, August 9, 1954.
 Decided October 8, 1954.
 
 Martin E. Sheets, Jr., St. Louis, Mo., for complainant.
 Maurice S. Meyer, Atty., Dept. of Justice, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., and Marvin C. Taylor, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondent.
 Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.
 LINDLEY, Judge.
 
 
 1
 This is a complaint under Section 408 (a) of the Defense Production Act of 1950, as amended, 50 U.S.C.A.Appendix, § 2108(a), to review an order of respondent entered March 8, 1954, denying a protest of a claim for recapture of certain coffee subsidy payments previously paid to complainant.
 
 
 2
 Complainant, an importer of green coffee, entered into Agreement No. 160 with respondent, effective November 19, 1945, for participation in the coffee subsidy program, executed pursuant to the provisions of Directive 87 of the Office of Economic Stabilization, 32 C.F.R., 1945 Supp. Sec. 4003.62, and providing that respondent would pay complainant a subsidy of three cents per pound on green coffee purchased by it between November 19, 1945 and March 31, 1946, and shipped, or having had shipping space booked for shipment, prior to April 1, 1946, not to exceed 2,313,920 pounds. Paragraph 13 provided that the contractual terms might be modified at any time by mutual consent of the parties, but that any such change would "not affect any right accrued under this agreement prior to such modification."
 
 
 3
 By mutual consent the parties entered into a modification effective March 19, 1946, as authorized by Amendment 2 to Directive 87, 32 C.F.R., 1946 Supp. Sec. 4003.62, which more than doubled complainant's import subsidy quota and extended by several months the permissible dates of purchase and shipment. Paragraph 14 was added to provide for recapture of subsidy payments based on the shipper's terminal inventory in the event maximum prices for coffee were increased. Pursuant to Amendment 3 to Directive 87, 32 C.F.R., 1946 Supp. Sec. 4003.62, the agreement was further modified by mutual consent, effective May 7, 1946.
 
 
 4
 As thus modified, Paragraph 14 provided that:
 
 
 5
 "14. In the event of an increase in or removal of OPA maximum prices on coffee, the importer shall pay to RFC an amount equal to the equivalent of the increase in value of his inventory, computed as follows:
 
 
 6
 "a. The rate shall be three cents a pound green basis, or the increase in OPA maximum prices, whichever is lower.
 
 
 7
 "b. The inventory shall include all types of coffee measured in green basis equivalents, at the close of business on the day prior to such increase in or removal of maximum prices, which either the importer owns in the continental United States or for which a bill of lading covering shipment to the United States for the importer's account has been issued in a foreign port; provided that the total inventory shall be reduced by the quantity of such coffee which the importer has contracted to sell at fixed price not to exceed the OPA maximum prices for such coffee in effect April 1, 1946.
 
 
 8
 "c. The total amount of repayment to RFC under this paragraph shall not exceed the amount of payments by RFC to the importer under this agreement as amended."
 
 
 9
 Complainant purchased coffee periodically under the original agreement and its modifications. Subsidy claims on such purchases were approved by RFC and paid. Price controls on coffee were removed and the coffee subsidy suspended on July 1, 1946, with the expiration of the 1942 Act, but maximum prices were reimposed on July 25, 1946 by the Price Control Extension Act of 1946, 60 Stat. 664. On August 14, 1946, the ceiling price was increased by Amendment 16 to Revised Price Schedule 50, 11 F.R. 8868, but the subsidy program was never resumed.
 
 
 10
 On November 26, 1946, respondent, by letter-order, asserted its claim receivable against complainant under the inventory recapture provisions of paragraph 14 of the agreement, as modified, calculated upon the total quantity of coffee which complainant had in inventory on August 14, 1946, in the amount of $35,227.11. To this amount respondent credited complainant's then payable subsidy claims in the amount of $3,960 and demanded restitution of the balance of $31,267.11 plus interest thereon at the rate of 4% per annum from and after December 1, 1946.
 
 
 11
 Complainant protested the order on December 11, 1953, on the grounds, (1) "That the determination of the amount of the claim is arbitrary and capricious, (2) That the determination of the amount of interest due on said claim is arbitrary and capricious, and (3) That the regulation or so-called agreement upon which the above determinations are made are not in accordance with law." The protest was denied March 8, 1954, and this complaint followed, in which objection is made to both the claim and the assessment of interest thereon.
 
 
 12
 Complainant contends that the agreement should be interpreted as limiting recapture thereunder to inventory on which complainant received subsidy payments under the March 19, 1946 modification. It argues that any other interpretation would result in destruction of rights accrued to complainant under the original agreement in violation of the express provision of paragraph 13a that any modification by mutual consent should "not affect any right accrued under this agreement prior to such modification." In the alternative, complainant asserts that recapture should be limited to that portion of its inventory on which it, in fact, had received subsidy payments. Respondent insists that it has correctly claimed recapture on the basis of total terminal inventory without regard to whether or not subsidy payments had been made thereon.
 
 
 13
 Complainant's argument must be construed in the light of this court's decision in Duncan Coffee Co. v. R.F.C., Em.App., 178 F.2d 926, certiorari denied 339 U.S. 947, 70 S.Ct. 801, 94 L.Ed. 1361, in which we reviewed the coffee subsidy program and the recapture provisions of the standard subsidy agreements. There Duncan advanced the contention that paragraph 14 "should be construed as applying only to the green coffee actually imported by the Duncan Coffee Company during the life of the contract, and not to that coffee which had been imported prior to the inception of the coffee subsidy program, or to coffee purchased by the Duncan Coffee Company from other importers", on which, therefore, Duncan had received no subsidy payments. 178 F.2d at page 929. We held the recapture provisions of paragraph 14 providing for recapture based on total terminal inventory owned by the importer "at the termination of the coffee subsidy program" valid, saying, 178 F.2d at page 930: "To construe it as complainant urges would be to rewrite the agreement of the parties. * * * While complainant denies that it ever consented to the interpretation placed on the contract by respondent, nevertheless, it adopted the language from which that interpretation logically flows."
 
 
 14
 This language effectually disposes of complainant's arguments as to the construction of paragraph 14. As pointed out in Duncan, we are dealing with contractual stipulations, wherein, in consideration of a substantial increase in its subsidy quota on green coffee and extended shipping dates, complainant agreed to repay to respondent three cents per pound green basis on all types of coffee "`which the importer owns in the continental United States, at the close of business on the day prior to such increase in maximum prices.'" This language is too clear to admit of any construction other than to give to it its natural meaning. United States v. Choctaw, Etc., Nations, 179 U.S. 494, 21 S.Ct. 149, 45 L.Ed. 291. In voluntarily executing this agreement complainant assumed the obligations and accepted the benefits flowing therefrom. It has no legal cause for complaint if, in retrospect, the obligations outweigh the benefits actually received.
 
 
 15
 This interpretation is clearly consonant with the purpose of the subsidy program instituted to eliminate the hardship on the coffee importer who was caught in the economic vise between a rigid sale price for his commodity and increasing cost prices therefor in his foreign market. Although the subsidy was paid on the basis of green coffee purchased, since entitlement to the subsidy was conditioned on sale of the subsidized commodity at or below established maximum prices, 32 C.F.R., 1945 Supp. Sec. 4003.62(7), the subsidy was, in effect, an adjunct to the maximum selling price. When the maximum prices were increased or removed, the enhanced value of the importer's inventory eliminated this hardship, and, to the extent of his inventory at that time, the reason for the existence of the subsidy disappeared.
 
 
 16
 Complainant relies, however, on the limitation clause contained in subparagraph c of paragraph 14 that "the total amount of repayment to RFC shall not exceed the amount of payments by RFC to the importer under this agreement as amended" as restricting recapture to inventory which was purchased after March 19, 1946. It argues that subsidies paid to it prior to that date were not conditioned on recapture and that, on payment of such subsidies, the right accrued to it to keep them, a right which, under the provisions of paragraph 13a of the original agreement, could not be affected by subsequent modification.
 
 
 17
 We considered a similar contention in the Duncan case, construing the proscription of paragraph 13 against subsequent modification affecting accrued rights as relating "only to subsequent downward modifications of the maximum quantity of coffee covered * * *." We concluded, "that the recapture provisions of paragraph 14 are not within the prohibition of paragraph 13 stipulating against modification of the contract affecting accrued rights." 178 F.2d at page 931. We reaffirm this interpretation but add thereto a proscription against subsequent downward modification of the subsidy rate on this allotted quota.
 
 
 18
 Thus, under the original agreement, complainant acquired the right to receive a subsidy of three cents per pound for each pound of green coffee, not exceeding 2,313,920 pounds, purchased by it for importation to the United States during a specified period of time. These are the rights which paragraph 13 was designed to protect. As we understand complainant's argument, it would require us to read into the agreement an additional right to keep subsidy payments thus received. That complainant possessed the latter right is not disputed, but this was a right which arose out of general principles of the law of property, not out of the agreement between the parties, a right to keep and enjoy or deal with the payments as it should see fit. Complainant could and did choose to bargain this right away in exchange for the benefits received by it under the March 19 and subsequent agreements, which included the recapture provisions of paragraph 14. Obviously this was a new agreement which operated in a wholly prospective fashion establishing new legal relationships between the parties. See Duncan Coffee Co. v. R. F. C., supra, 178 F.2d at page 930. In this respect, we find no valid ground for distinction between the argument now advanced and that previously urged by Duncan and rejected. The language of the limitation clause of paragraph 14c is lucid, limiting recapture to the amount of total subsidy payments made to the importer. Thus, respondent may not recapture an amount greater than that it has previously paid to an importer against whom a claim is made. We cannot read a time limitation into this language without rewriting the contract. We conclude that respondent's principal demand is based on a correct interpretation of paragraph 14.
 
 
 19
 Complainant contends, however, that, so interpreted, paragraph 14c is in conflict with paragraph 1(f)(iii) of Amendment 2 to Directive 87, 32 C.F.R., 1946 Supp. Sec. 4003.62(6)(iii). In pertinent part, this subsection is as follows: "(6) The Reconstruction Finance Corporation shall require that each importer, as a condition of obtaining any subsidy payment under this program, agree:
 
 
 20
 * * * * * *
 
 
 21
 "(iii) That in the event of an increase in maximum prices for coffee upon the termination of this subsidy program, he will refund to Reconstruction Finance Corporation the equivalent of such price increase (not to exceed three cents per pound, green basis) on all coffee which he then has in inventory on which the subsidy has been paid. For the purpose of this paragraph the subsidy shall be deemed to have been paid on all coffee which the importer has in inventory in the United States upon the termination of this program, not to exceed the quantity on which he has received subsidy payments." (Italics supplied.)
 
 
 22
 This argument rides hard on complainant's interpretation of the word "deemed" as employed in this paragraph. It is said that the word must be construed as raising only a rebuttable presumption that the subsidy has been paid on all coffee which an importer has in his terminal inventory, and that this presumption disappears on proof by an importer that, in fact, he has received no subsidy payments thereon. This contention flies directly into the teeth of the generally accepted definitive import of the word "deemed" and almost unanimous judicial determination that the word, when employed in statutory law, creates a conclusive presumption. E. g., United States v. Davis, 1 Cir., 50 F.2d 903; Harder v. Irwin, D.C., 285 F. 402; Intagliata v. Shipowners & Merchants Towboat Co., Cal.App., 151 P.2d 133, subsequent opinion 26 Cal.2d 365, 159 P.2d 1; King v. McElroy, 37 N.M. 238, 21 P.2d 80; Commonwealth v. Pratt, 132 Mass. 246. See 11 Words and Phrases, Deem, pp. 478-482. Absent qualifying language, or ambiguity, we must give to the word "deemed", as employed in the emphasized language of paragraph 1(f) (iii), its natural import.
 
 
 23
 Complainant contends, however, that the term, if so construed in this cause, will render the Directive in conflict with the due process clause of the Constitution, and invokes the doctrine that a court should adopt that interpretation of a statute which will render it valid rather than invalid. This argument ignores the fact that paragraph 1(f)(iii) is not self-executing and does not, of itself, affect the property of complainant or any other importer. The only effect of this paragraph is to empower RFC to entered into agreements with importers conditioned on subsidy recapture based on terminal inventory. Before his inventory is subject to its provisions, an importer must, of his own volition, have entered into an agreement with RFC to that effect. Having brought itself within the terms of the provision by its own voluntary act, complainant cannot say that the logical result offends against the due process clause.
 
 
 24
 A second contention is addressed to alleged conflict between the March 19 agreement and paragraph 1(f)(iii). Complainant points up certain differences between the phraseology of the regulation and that of paragraph 14 of the agreement which are said to reveal this conflict. We think the argument fallacious. Although RFC may not revoke or amend any of the fundamental features of the statutory subsidy program by contractual agreements with importers, this is not to say that its contracts must employ the identical language of the enabling regulation. Though respondent might preferably have drafted the agreement in the precise phraseology of the regulation, it is obvious that "all coffee which he then has in inventory * * * not to exceed the quantity on which he has received subsidy payments," the language of the regulation, and "each type of coffee which the importer owns * * * provided that the total amount of repayment to RFC shall not exceed the amount of payments by RFC to the importer," the language of the agreement, are synonymous in meaning, since each deals with recapture of subsidies at the same rate.
 
 
 25
 The remaining argument advanced by complainant in this vein is, we think, equally without merit. Complainant quotes a part of the language taken from the context of paragraph (7) of respondent's letter denying its protest which expresses the view that by merely executing the March 19 contract complainant would be bound by the recapture provisions of that agreement whether or not it had received subsidy payments thereunder. This is said to condition liability to subsidy recapture on staying in the subsidy program, a condition inconsistent with the provisions of paragraph 1(f) of Amendment 2 to Directive 87 which requires agreement to refund "as a condition of obtaining any subsidy payments under this program." On the transcript before us, we need not consider whether paragraph 14 is binding on an importer who executed the March 19 agreement but who received no subsidy payments thereunder, and, if so, whether that paragraph, as so construed, can stand. That question was not before respondent in this case. Complainant did, in fact, make two purchases of green coffee after the effective date of the March 19 agreement, to wit, on May 13 and June 4, 1946, on which it submitted claims for subsidy payments. These claims were approved and credited to complainant's account in the amount of $3,960.
 
 
 26
 On the basis that complainant had actually received payments under the modified agreement, respondent disposed of complainant's protest that it had not brought itself within the conditions requisite to establishment of liability to subsidy recapture on its terminal inventory. In conjunction with this disposition of the protest the challenged interpretation of paragraph 14 was stated as obiter. Indeed, the quoted language, when read in context, is expressly so qualified, i. e., "However, it is our opinion that, regardless whether any shipments were made subsequent to the dates of the amendments to the contract, you would still be bound by the recapture provision * * * because by the mere execution of the contract and amendments of March 19 and May 7, 1946, you agreed to accept the liabilities as well as the benefits that might accrue thereunder."
 
 
 27
 Complainant, in objecting to the demand for interest, presents a frequently recurring question. Neither the agreement nor the regulation requires payment of interest on a claim for subsidy recapture. It is said, therefore, that respondent's claim of interest at 4 per cent per annum from December 1, 1946, is arbitrary and capricious. Complainant relies on the additional argument that the assessment of interest is unfair and unjust because the record shows that complainant has contested respondent's principal demand in good faith.
 
 
 28
 Respondent denied complainant's protest of the demand for interest on two grounds, i. e., our decision in Wilson & Co. v. R.F.C., Em.App., 194 F.2d 1016, as supporting the demand and its own view that "It is our contention that H. P. Coffee Company has deliberately withheld the amount of the claim from RFC since December 1, 1946, during which time the Company has enjoyed the use of the money; that one who contracts to pay money * * * on the happening of a stated event must, if he fails to fulfill his contract, pay the established rate of interest as damages for nonperformance or as compensation for the use of the money; and that, therefore, under the law and facts of this case, the interest hereinabove referred to * * * is proper and valid."
 
 
 29
 The Wilson case may well be inapposite to the one at bar in that in the former there was proof that Wilson had prior notice by reason of previous like demands that claims by RFC for subsidy refund would be coupled with a demand for interest. However, the language quoted comprises a correct statement of the well settled federal rule. The question of whether interest is to be assessed upon the delayed payment of a contractual obligation is one for the discretion of the court guided by principles of equity and justice. Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L.Ed. 1361; United States v. Abrams, 6 Cir., 197 F.2d 803; Wilson & Co. v. RFC, Em.App., 194 F.2d 1016, 1021; United States v. Bass, 8 Cir., 215 F.2d 9. Complainant has retained the use of the money paid to it for a long period of time after the demand was made for repayment with notice that it included a claim for interest. Legally and equitably it should be held accountable for a reasonable rate of interest for such use. The demand of 4 per cent is not challenged as unreasonable.
 
 
 30
 Nor can the fact that complainant, in good faith, challenged the validity of respondent's principal demand affect this result. Presumably it is ever thus when a lawsuit is instituted to challenge a contractual obligation, which ultimately is determined to be valid. There is no showing that complainant could not have taken steps to stop the accrual of interest on the principal demand without losing its right to present its objections thereto to a competent court.
 
 
 31
 Equally wanting in merit is the contention that respondent has waived its right to interest. Assuming, arguendo, that counsel for respondent's Saint Louis Office could, by his actions, effectively bind respondent to a waiver of its claim, the letter to which reference is made cannot be so construed. The effect of that letter was to accept the status quo, i. e., respondent would not insist on immediate settlement of its claim, until the Duncan case, supra, had been decided. This is the clear import of the letter to which reference is made. Complainant cannot have been misled thereby to its prejudice.
 
 
 32
 Judgment will enter dismissing the complaint.