857 F.2d 833
 273 U.S.App.D.C. 42
 PUBLIC SERVICE COMPANY OF NEW MEXICO, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
City of Gallup, New Mexico, Intervenor.
CITY OF GALLUP, NEW MEXICO, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Public Service Company of New Mexico, Intervenor.
 Nos. 86-1311, 86-1313.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 13, 1987.
Decided Sept. 27, 1988.
 
 John T. Stough, Jr., with whom Paul H. Keck, Brian R. Gish and Nancy A. White, Washington, D.C., were on the brief, for petitioner-intervenor Public Service Co. of New Mexico.
 Philip B. Malter, with whom Charles F. Wheatley, Annapolis, Md., was on the brief, for petitioner-intervenor City of Gallup, N.M.
 Joshua Z. Rokach, Atty., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., and John H. Conway, Atty., F.E.R.C., Washington, D.C., were on the brief, for respondent. Arlene Pianko Groner and Barbara J. Weller, Attys., F.E.R.C., Washington, D.C., entered appearances for respondent.
 Before ROBINSON and MIKVA, Circuit Judges, and GORDON*, Senior District Judge.
 Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 The City of Gallup, New Mexico, and the Public Service Company of New Mexico (PNM) petition for review of an order which implements Opinion No. 164 of the Federal Energy Regulatory Commission. The parties raise a number of complex legal issues, but the decisive question is whether the Commission designated correctly the point in time at which the rates authorized by Opinion No. 164 should take effect. We hold that the Commission erred in making those rates operative as of May 12, 1983, the date on which it issued Opinion No. 164, instead of October 12, 1984, when it accepted PNM's compliance filing[1] made pursuant to the questioned order.[2]
 
 
 2
 * Under its contracts with Gallup, PNM is precluded from increasing the rates at which it sells electric power to Gallup save through a proceeding under Section 206 of the Federal Power Act.[3] In 1980, PNM initiated such a proceeding to raise the rates charged to Gallup and four other wholesale customers.[4] The matter was set for a hearing, an administrative law judge rendered an initial decision,[5] and on May 12, 1983, that decision was affirmed in part and reversed in part by the Commission in Opinion No. 164, the upshot of which was a rate hike for PNM.[6] Both PNM and Gallup sought rehearing, which was denied by the Commission in Opinion No. 164-A.[7]
 
 
 3
 The order accompanying Opinion No. 164 directed PNM to make a compliance filing within 75 days of its issuance.[8] The opinion decreed, however, in accordance with its Opinion No. 133-A in an earlier case,[9] that the new rates become effective as of May 12, 1983, the issue date of Opinion No. 164 and the related order.[10]
 
 
 4
 Meanwhile, approval of PNM's compliance filing proceeded at a slow pace. The filing was made on July 12, 1983,[11] and Gallup submitted its protest on August 12,[12] but the Commission did not respond until February 3, 1984, when the director of its Office of Electric Power Regulation informed PNM by letter that the filing did not comport with Opinion No. 164.[13] PNM appealed from the director's action,[14] but later submitted a revised compliance filing.[15] On October 12, 1984, the Commission accepted this filing as conforming to Opinion No. 164.[16]
 
 
 5
 Gallup claims that the Commission erred when it made the new rates effective as of the date of Opinion No. 164 and its accompanying order rather than the date of acceptance of PNM's compliance filing. Gallup relies chiefly upon our decision in Electrical District No. 1 v. FERC,[17] in which we rejected an attempt by the Commission to make rates effective earlier than the compliance filing. We held that since a Commission directive to make such a filing does not itself fix the rates to be charged, the Commission is without authority to give them vitality prior to the date on which it actually accepts the compliance filing.[18]
 
 
 6
 The Commission, and PNM as intervenor, advance three arguments for a contrary result here. First, they argue that Gallup did not raise this issue when it sought rehearing by the Commission, and thus failed to preserve it.[19] Second, they maintain that Electrical District does not apply to the facts of this case.[20] Lastly, PNM asserts that this court is not at liberty to apply Electrical District retroactively to a point predating that decision.[21] We consider these questions in turn.
 
 II
 
 7
 Section 313 of the Federal Power Act[22] prohibits a reviewing court from considering any objection to a Commission order that was not presented to the Commission on rehearing "unless there is reasonable ground for failure so to do."[23] Since Gallup did not tender in its petition for rehearing of Opinion No. 164,[24] the issue it wishes to litigate here, the question is whether there was reasonable cause for the omission.
 
 
 8
 This is not the first occasion upon which Gallup has clashed with the Commission over the effective date of a rate submitted for its approval. In three successive Section 206 proceedings involving Gallup and PNM prior to the instant case, the Commission took the position to which it now subscribes.[25] In the first two of those cases, Gallup complained to the Commission on rehearing that the new rates should not become operative as of the date of the Commission's order.[26] In the second case, the Commission responded to Gallup's protest simply by citing its decision in the first case as binding precedent.[27] Gallup insists that the results of its prior encounters with the Commission demonstrate amply that the Commission was prepared to reject Gallup's thesis once again if it were raised on rehearing, and accordingly that there was no reason for Gallup to "engage in the futile exercise of tendering any further argument in the record below."[28]
 
 
 9
 The Commission's reply, however, is that our later decision in ASARCO, Inc. v. FERC[29] reaffirmed the mandatory nature of the requirement that issues be presented on rehearing in order to qualify for judicial review. While we there resisted dilution of this requirement to a flexible exhaustion requirement,[30] that is wholly beside the point. The crucial factor is that the statute itself excuses litigants from interposing an objection on rehearing if "there is reasonable ground for failure so to do."[31]
 
 
 10
 Our opinion in ASARCO, of course, in no way alters this provision. And on the facts of this case, Gallup certainly had reasonable ground for omitting on rehearing a proposition the merits of which it twice had unsuccessfully pressed before the Commission during the last three years. We hold that Gallup is in position to petition for review of the Commission's decision on the effective date of PNM's new rates.[32]
 
 III
 
 11
 Both the Commission and PNM contend on the merits that Electrical District is not controlling in this case.[33] As they read that decision, the Commission is free to choose from a variety of timepoints at which rates are to become operative.[34] PNM attempts additionally to distinguish Electrical District on the basis that there the utility did not make any compliance filing until eleven months after the Commission called for it, while in this case PNM tendered a compliance filing within 30 days of Opinion No. 164 and the order related to it.[35]
 
 
 12
 The Tenth Circuit was not impressed by these arguments when recently it reviewed three rate cases involving the three parties here.[36] The court felt that the legal issues presented in Electrical District and the cases before it were identical--"the lawfulness of FERC's decision to make a rate increase effective as of the date of its order directing a compliance filing, rather than upon the date of acceptance of the compliance filing."[37] The court interpreted Electrical District as suggesting alternative courses by which the Commission might cure defects in the procedures then in use, but not as permitting the Commission to choose from an assortment of dates the time at which rates could go into operation.[38]
 
 
 13
 Our own analysis leads us to agree fully. The issue here is the same one addressed in Electrical District, and the factual situations are congruent in all salient respects. In the case at bar, the Commission predicated its ruling concerning effective date solely upon the purported authority of its Opinion No. 133-A,[39] precisely as it did in Electrical District[40] and the three cases reviewed in the Tenth Circuit.[41] Our decision in Electrical District totally disapproved the Commission's policy regarding the effective date;[42] indeed, the Commission no longer adheres to it.[43] Certainly our suggestion in Electrical District of alternative procedures for enlivening rates[44] cannot be taken as embracing the rejected policy itself.
 
 IV
 
 14
 Finally, PNM maintains that the principles laid down by the Supreme Court in Chevron Oil Co. v. Huson[45] counsel against retroactive application of Electrical District in this case. While judicial decisions ordinarily exert their usual force in all subsequent litigation,[46] the Chevron Court recognized that equitable considerations may occasionally stay application of a holding to another case in which all significant events occurred prior thereto. Since the Commission's Opinion No. 164 was issued two years prior to our decision in Electrical District, we must determine whether Chevron interposes any sort of barrier here.
 
 
 15
 Chevron specified three separate factors pertinent to an inquiry on retroactivity:
 
 
 16
 First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."[47] Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively there is ample basis in our cases for avoiding the 'injustice or hardship by a holding of nonretroactivity.' "[48]
 
 
 17
 The first criterion works somewhat in PNM's favor, for Electrical District reversed prior Commission precedent upon which PNM could have relied. But PNM does not fare nearly as well on the second, which demands consideration of the "prior history," "purpose" and "effect" of the new rule announced in Electrical District, and whether operation of that rule would be assisted or hindered by retroactive application in this case. Electrical District rested on "the Federal Power Act's primary purpose of protecting the utility's customers,"[49] and held that the Commission's then-existent rule robbed electric power rates of the predictability necessary for wholesale customers to calculate appropriate resale rates.[50] We can see no difference between Electrical District and this case in that respect. The Electrical District rule would protect Gallup, a wholesale customer, from exactly the same kind of unpredictability identified in Electrical District. In Chevron, by contrast, the purpose of a statute designed to aid injured employees would have been ill-served had the statute been given retrospective effect to bar an employee's claim on grounds not foreseeable by him.[51]
 
 
 18
 Nor does the third Chevron factor--visitation of "substantial inequitable results"--interpose a bar to retroactive operation of Electrical District here. In Chevron, the plaintiff's delay in bringing his action was excusable under the law then in force, but retroactive application of the Supreme Court's decision, which the plaintiff could not then have anticipated, would have frustrated his suit.[52] It thus would have been inequitable to rule that the plaintiff had "slept on his rights."[53]
 
 
 19
 In the instant case, PNM is the only party that arguably could be hurt by retroactive application of Electrical District. PNM relied on the pre-Electrical District state of the law, and retrospective application of that decision could have injured PNM if that reliance prevented it from winning acceptance of its compliance filing before January 1, 1984, when the agreement between Gallup and PNM establishing new rates became operative.[54] Any delay past that date, of course, would be inconsequential because of that settlement.
 
 
 20
 PNM tendered its first compliance filing on July 12, 1983, within 30 days of the Commission's decision. Gallup objected to the filing 31 days later, and Gallup's position was upheld on February 3, 1984. Even had Electrical District been the law at that time, any assumption that PNM could have altered this sequence of events would be mere speculation.[55] Retroactive application of Electrical District in this case therefore does not work a substantially inequitable result. Nor do we think the benefit PNM derives from application of the first Chevron criterion, standing alone, suffices to override the general rule that judicial decisions are to be retrospectively applied in cases subsequently coming before the courts. We conclude that Electrical District properly controls the disposition to be made in this case.
 
 
 21
 The Commission's Opinion No. 164 and related order, insofar as they undertake to establish the effective date of PNM's rates to Gallup, are set aside. The petitions for review, to the extent that they address other issues, are dismissed as moot. The case is remanded to the Commission for further proceedings consistent with this opinion.
 
 
 22
 So ordered.
 
 
 
 *
 Of the United States District Court for the Eastern District of Wisconsin, sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 "Compliance filing" is the common term for the revised cost-of-service estimates, rate schedules and tariffs which a utility submits in conformity with a Commission order
 
 
 [2]
 On January 1, 1984, prior to the Commission's acceptance of PNM's compliance filing, an agreement between Gallup and PNM settling a subsequent rate controversy took effect. The rates specified in that agreement superseded the rates at issue in this case. Since at no time thereafter could the rates contested before us remain applicable, the other issues raised by the parties are moot
 
 
 [3]
 16 U.S.C. Sec. 824e. See Brief for Respondent at 4
 
 
 [4]
 See Brief for Petitioner City of Gallup, New Mexico, at 2. A settlement between PNM and the other four wholesale customers was approved by the Commission in 1982. Id
 
 
 [5]
 Public Serv. Co. of N.M., 22 F.E.R.C. p 63,001 (Jan. 3, 1983) [hereinafter Initial Decision ]
 
 
 [6]
 Public Serv. Co. of N.M. (Opinion No. 164), 23 F.E.R.C. p 61,218 (May 12, 1983) (opinion and order) [hereinafter Opinion No. 164 ]
 
 
 [7]
 Public Serv. Co. of N.M. (Opinion No. 164-A), 24 F.E.R.C. p 61,051 (July 13, 1983) (opinion and order denying rehearing)
 
 
 [8]
 Opinion No. 164, supra note 6, 23 F.E.R.C. at 61,462
 
 
 [9]
 Public Serv. Co. of N.M. (Opinion No. 133-A), 18 F.E.R.C. p 61,036 (1982)
 
 
 [10]
 Opinion No. 164, supra note 6, 23 F.E.R.C. at 61,462. At oral argument, counsel disclosed that PNM continued to charge Gallup at the old rates, and that in October, 1984, when the new rates were finally specified, they were charged back to May 12, 1983
 
 
 [11]
 Protest of Compliance Filing Submitted by City of Gallup at 1, Joint Appendix (J.App.) 415
 
 
 [12]
 Id. at 6, J.App. 420
 
 
 [13]
 Letter from Lawrence R. Anderson to John T. Stough (Feb. 3, 1984), at 1, J.App. 442
 
 
 [14]
 Petition of Public Service Company of New Mexico to Appeal Action of the Director of the Office of Electric Power Regulation, Public Serv. Co. of N.M., No. ER81-187-004 (filed Mar. 5, 1984), J.App. 427
 
 
 [15]
 Appendix to Brief for Intervenor Public Service Company of New Mexico in Support of Respondent at 1-3
 
 
 [16]
 Public Serv. Co. of N.M., 29 F.E.R.C. p 61,095 (Oct. 12, 1987) (letter order)
 
 
 [17]
 249 U.S.App.D.C. 190, 774 F.2d 490 (1985)
 
 
 [18]
 Id. at 193, 774 F.2d at 493
 
 
 [19]
 Brief for Respondent at 39-42; Brief for Intervenor Public Service Company of New Mexico in Support of Respondent at 27-30
 
 
 [20]
 Brief for Respondent at 43; Brief for Intervenor Public Service Company of New Mexico at 31-33
 
 
 [21]
 See Brief for Intervenor Public Service Company of New Mexico at 32
 
 
 [22]
 16 U.S.C. Sec. 825l (b) (1982)
 
 
 [23]
 Id
 
 
 [24]
 Brief for Petitioner City of Gallup, New Mexico at 44
 
 
 [25]
 See Public Serv. Co. of N.M. v. FERC, 832 F.2d 1201, 1223 (10th Cir.1987) [hereinafter PNM I ]
 
 
 [26]
 Brief for Petitioner City of Gallup, New Mexico at 43
 
 
 [27]
 Id
 
 
 [28]
 Id. at 44. See PNM I, supra note 25, 832 F.2d at 1224-1225
 
 
 [29]
 250 U.S.App.D.C. 105, 777 F.2d 764 (1985)
 
 
 [30]
 Id. at 115, 777 F.2d at 774
 
 
 [31]
 16 U.S.C. Sec. 825l (b) (1982)
 
 
 [32]
 Additionally, we note that Gallup would be excused from the rehearing requirement even under a strict application of the ASARCO rationale since this is one of those "extraordinary situation[s]" in which an agency has subsequently revised its practice. ASARCO, Inc. v. FERC, supra note 29, 250 U.S.App.D.C. at 115, 777 F.2d at 774; see note 43 infra and accompanying text; PNM I, supra note 25, 832 F.2d at 1223-1225 & n. 25
 
 
 [33]
 Brief for Respondent at 43; Brief for Intervenor Public Service Company of New Mexico at 32-33
 
 
 [34]
 Brief for Respondent at 43; Brief for Intervenor Public Service Company of New Mexico at 31-32
 
 
 [35]
 Brief for Intervenor Public Service Company of New Mexico at 31
 
 
 [36]
 PNM I, supra note 25, 832 F.2d at 1225
 
 
 [37]
 Id. (quoting Electrical Dist. No. 1 v. FERC, supra note 17, 249 U.S.App.D.C. at 191, 774 F.2d at 491)
 
 
 [38]
 PNM I, supra note 25, 832 F.2d at 1223 n. 23
 
 
 [39]
 Opinion No. 164, supra note 6, 23 F.E.R.C. at 61,462 (citing Public Serv. Co. of N.M. (Opinion No. 133-A), supra note 9)
 
 
 [40]
 See Electrical Dist. No. 1 v. FERC, supra note 17, 249 U.S.App.D.C. at 191, 774 F.2d at 491
 
 
 [41]
 See PNM I, supra note 25, 832 F.2d at 1225
 
 
 [42]
 249 U.S.App.D.C. at 192-194, 774 F.2d at 492-494
 
 
 [43]
 See Kansas Gas & Elec. Co., 34 F.E.R.C. p 61,288 (1986); see also PNM I, supra note 25, 832 F.2d at 1223
 
 
 [44]
 Electrical Dist. No. 1 v. FERC, supra note 17, 249 U.S.App.D.C. at 194-195, 774 F.2d at 494-495
 
 
 [45]
 404 U.S. 97, 106-107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296, 306 (1971)
 
 
 [46]
 E.g., Cort v. Ash, 422 U.S. 66, 76-77, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26, 35 (1975); Bradley v. School Bd., 416 U.S. 696, 711, 712, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974); Mullins v. Andrus, 214 U.S.App.D.C. 171, 176, 664 F.2d 297, 302 (1980)
 
 
 [47]
 404 U.S. at 106-107, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (quoting Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601, 608 (1985))
 
 
 [48]
 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306 (quoting Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647, 652 (1969))
 
 
 [49]
 249 U.S.App.D.C. at 192-193, 774 F.2d at 492-493
 
 
 [50]
 Id
 
 
 [51]
 See Chevron Oil Co. v. Huson, supra note 45, 404 U.S. at 107-108, 92 S.Ct. at 356, 30 L.Ed.2d at 306
 
 
 [52]
 Id. at 107, 92 S.Ct. at 356, 30 L.Ed.2d at 306
 
 
 [53]
 Id. at 108, 92 S.Ct. at 356, 30 L.Ed.2d at 306-307
 
 
 [54]
 See note 2 supra
 
 
 [55]
 PNM's revised compliance filing, Gallup's objections thereto and the eventual order of the Commission accepting the revised compliance filing all occurred subsequent to the January 1, 1984, cutoff date, and thus do not affect our holding on this issue