**MUNICIPAL RESALE SERVICE CUSTOMERS, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Ohio Power Company, Intervenor.**

No. 93–3942.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1994.

Decided Jan. 10, 1995.

Carter G. Phillips, Joseph R. Guerra (argued and briefed), Sidley & Austin, Washington, DC, for petitioner.

Jerome M. Feit, Timm L. Abendroth (argued and briefed), Joseph S. Davies, F.E.R.C., Office of the Sol., Washington, DC, for respondent.

Edward J. Brady, American Elec. Power Service Corp., Columbus, OH, Edward Berlin (argued), Kenneth G. Jaffe (briefed), Swidler & Berlin, Washington, DC, for intervenor.

Before: RYAN and BATCHELDER, Circuit Judges; and JOINER, District Judge *.

JOINER, Senior District Judge.

Petitioners, Municipal Resale Service Customers (MRSC), are fifteen Ohio villages and cities that purchase electrical power from the Ohio Power Company. The MRSC filed a complaint with the Federal Energy Regulatory Commission (FERC), challenging Ohio Power's wholesale rates for the years 1986–1990 on the ground that Ohio Power's rates were based on the full cost of coal that it had obtained from subsidiaries rather than on the prevailing market price of coal, in violation of FERC's "comparable market test." FERC dismissed the petition, concluding that it was bound by a decision of the Court of Appeals for the District of Columbia which resolved prior litigation between Ohio Power and fourteen of the municipalities involved in this case. We deny the MRSC's petition for review.

## I.

### A. Statutory Scheme

This case concerns the overlapping regulatory authority of the Securities and Exchange Commission and FERC as established by the Public Utility Act of 1935. Title I of that Act, known as the Public Utility Holding Company Act (PUHCA), 15 U.S.C. §§ 79 *et seq.*, subjects transactions between public utility holding companies and their affiliates to regulation by the SEC. Section 13(b) of the PUHCA, 15 U.S.C. § 79m(b), requires the SEC to ensure that contracts between associate companies of a public utility holding company be performed "economically and efficiently for the benefit of such associate companies at cost, fairly and equitably allocated among such companies." Title II of the Public Utility Act, known as the Federal Power Act (FPA), 16 U.S.C. §§ 824 *et seq.*, authorizes FERC to regulate the transmission and sale of electric energy by public utilities, with the general mandate of ensuring that wholesale power rates be "just and reasonable." FPA § 205(a), 16 U.S.C. § 824d(a). Thus, the SEC is required by the PUHCA to approve the prices for purchases of "captive" coal, while FERC is required by the FPA to establish "just and reasonable" wholesale power rates. The statutory delegation of these

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

potentially conflicting responsibilities to different federal agencies is at the core of the parties' dispute.

## B. Ohio Power Company and Prior Litigation

Intervenor Ohio Power Company is a subsidiary of the American Electric Power Company, a registered public utility holding company. Ohio Power produces electricity with coal-burning generation plants, and purchases coal from two affiliates, Southern Ohio Coal Company (SOCCO) and Central Ohio Coal Company (COCCO). In 1971, the SEC authorized Ohio Power to establish and capitalize SOCCO. The SEC's first order approved the purchase and sale of SOCCO's stock, and stated that SOCCO's charges for coal would be based on actual costs. Subsequent orders provided that SOCCO's prices would not exceed its cost.[1] In 1982, the SEC approved Ohio Power's transfer to COCCO of the Muskingum mine, from which coal purchases were made in this case, including contract terms providing for the coal price to be paid by Ohio Power to COCCO. *Ohio Power Co.*, SEC Holding Company Act Release No. 22770 (Dec. 10, 1982).

Ohio Power filed a rate increase application with FERC in 1982, to which fifteen of its municipal customers objected on the ground that the rates passed through the full cost of coal that Ohio Power had purchased from SOCCO's Martinka mine. Litigating under the name "Municipal Wholesale Electric Customers of Ohio Power Company," the municipalities claimed that those costs exceeded the market price of coal and therefore violated FERC's comparable market test, under which a utility purchasing goods from an affiliate is permitted to pass on only the market price, not the cost, of those goods. FERC agreed, rejecting Ohio Power's argument that its cost-based rates should be approved because the fuel costs had been approved by the SEC. FERC concluded that SOCCO's coal price exceeded the prevailing market price, and was unreasonable and not

includable in Ohio Power's wholesale rates. *Ohio Power Co.*, 39 FERC ¶ 61,098 (1987).

On appeal, the D.C. Circuit reversed, with two judges concluding that Ohio Power was subject to conflicting requirements of the SEC and FERC, and that FERC's authority was ousted by FPA § 318, 16 U.S.C. § 825q, pertaining to conflicts of jurisdiction arising as a result of requirements of the PUHCA and the FPA "with respect to the same subject matter." *Ohio Power Co. v. FERC*, 880 F.2d 1400 (D.C.Cir.1989), *rev'd*, 498 U.S. 73, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990). Then–Judge Abner Mikva concurred in the judgment only, disagreeing that § 318 applied, but stating that FERC's own regulation, 18 C.F.R. § 35.14(a)(7), precluded its disapproval of Ohio Power's rates. *Id.* at 1412–14.

The Supreme Court reversed, holding that FPA § 318 did not apply because Ohio Power was not subject to SEC and FERC requirements "with respect to the same subject matter" as required by the statute. *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 83–85, 111 S.Ct. 415, 421–22, 112 L.Ed.2d 374 (1990). The Court remanded the case for determinations as to whether FERC's decision violated its own regulation, as suggested by Judge Mikva, and whether the FERC-prescribed rate was not just and reasonable because it "trapped" costs which the SEC had approved, "disregarding a governmental assurance, possibly implicit in the SEC approvals, that Ohio Power will be permitted to recoup the cost of acquiring and operating SOCCO." *Id.* at 85, 111 S.Ct. at 422.

On remand, the D.C. Circuit followed the routes identified by the Supreme Court. *Ohio Power Co. v. FERC*, 954 F.2d 779 (D.C.Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 483, 121 L.Ed.2d 388 (1992). The court first looked to FERC's regulation, 18 C.F.R. § 35.14(a)(7), which addresses fuel price adjustment clauses filed in rate schedules, and provides in part that "[w]here the utility purchases fuel from a company-owned or controlled source, the price of which is subject to the jurisdiction of a regulatory body,

1. These orders are described more fully in *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 76, 111 S.Ct. 415, 417–18, 112 L.Ed.2d 374 (1990).

such cost *shall be deemed to be reasonable and includable in the adjustment clause.*" (Emphasis added.) Relying on the plain language of this regulation, the court held that FERC was obligated to find "reasonable and includable" in Ohio Power's wholesale rates its fuel costs as approved by the SEC. 954 F.2d at 783–84.

The broader, independent basis for invalidating FERC's action was § 13(b) of the PUHCA, 15 U.S.C. § 79m(b), which, the court found, requires the SEC to approve cost-based pricing of captive coal purchases. The court rejected the argument that no conflict between the SEC and FERC could exist simply because FERC regulates Ohio Power's wholesale power rates rather than its fuel costs. "By declaring a portion of the SOCCO coal price unreasonable and therefore not includable in Ohio Power's wholesale rate, FERC is undeniably affecting the economic relationship between Ohio Power and SOCCO, a relationship approved by, and under the jurisdiction of, the SEC." 954 F.2d at 784. The court resorted to the familiar maxim that a specific statutory provision (PUHCA § 13(b)'s requirement that affiliate contracts be performed "at cost") takes precedence over a general provision (FERC's general mandate to ensure just and reasonable wholesale rates under FPA § 205(a)). The court concluded that "FERC may not set a cost-trapping rate level where that effect is occasioned by a recovery calculation inconsistent with an SEC determination governing an interassociate transfer subject to § 13(b) of the PUHCA." 954 F.2d at 786.

FERC and the municipalities filed petitions for certiorari, challenging both bases of the D.C. Circuit's opinion, but the Supreme Court denied their petitions. *Arcadia v. Ohio Power Co.*, —— U.S. ——, 113 S.Ct. 483, 121 L.Ed.2d 388 (1992).

### C. The Instant Case

The MRSC's complaint was filed with FERC in 1991, following the Supreme Court's reversal of the D.C. Circuit's first decision but prior to that court's decision on remand. The MRSC contended, again, that Ohio Power's rates were unjust and unreasonable because they were based on the cost of coal it purchased from affiliates rather than on the prevailing market price. The instant case differed from the prior case in three respects: the rates challenged were for the years 1986–1990, while the prior case involved the years 1980–1986; the city of Clyde, which did not purchase power from Ohio Power until 1989, was not involved in the prior case; and the coal purchases in question came from two mines not involved in the prior case. By agreement, the case was stayed until the Supreme Court's denial of certiorari following the D.C. Circuit's second opinion. Ohio Power then moved to dismiss the complaint, arguing that the D.C. Circuit's decision precluded the relief sought by the MRSC. FERC agreed, stating that the prior litigation was identical in all relevant respects to the present case, and that it was without authority to order relief by reason of the D.C. Circuit's decision. FERC denied the MRSC's subsequent application for rehearing,[2] and this timely appeal followed.

### II.

#### A. Appellate Jurisdiction

■ Appellate review of FERC orders is governed by FPA § 313, 16 U.S.C. § 825*l*. Subsection (a) states, "No proceeding to review any order[s] of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." Subsection (b) governs the scope of judicial review, and provides that "[n]o objection to the order of the Commission shall be considered by the

---

**2.** The MRSC advanced a variety of arguments before FERC, both in opposition to the motion to dismiss and in support of its application for rehearing, including arguments that the SEC had delegated its authority to FERC by virtue of earlier Holding Company Act releases; that FERC was free to amend its fuel clause adjustment policy through the instant case, regardless

of the D.C. Circuit's reading of the applicable regulation; and that FPA § 205(f) permitted FERC to exercise its rate-approval jurisdiction. With the exception of § 205(f), none of the arguments made by the MRSC before FERC is advanced in this court. Conversely, the arguments that *are* advanced here were *not* raised before FERC, as discussed in Part II.A. of the text.

court unless such objection shall have been urged before the Commission in the application for rehearing *unless there is reasonable ground for failure to do so.*" (Emphasis added.) Noncompliance with § 313 imposes a jurisdictional bar to appellate review. *Kentucky Utilities Co. v. FERC,* 789 F.2d 1210, 1214–15 (6th Cir.1986); *Kentucky Utilities Co. v. FERC,* 766 F.2d 239, 248 (6th Cir.1985).

▮▮▮ The MRSC urge us to review each basis articulated by the D.C. Circuit for holding that FERC may not prohibit a public utility from passing through SEC-approved fuel prices in its wholesale power rates. The MRSC did not raise these issues in their application for rehearing before FERC. The question is whether this failure is excused by a "reasonable ground." The MRSC argue persuasively that they reasonably refrained from raising their challenges to the D.C. Circuit's opinion because FERC was fully aware of their arguments, and, in fact, shared their views. According to the MRSC, FERC itself confirmed that it would have been futile for them to have raised their challenges to the D.C. Circuit's opinion, by announcing in its Supreme Court brief seeking certiorari that it considered itself bound by that decision in future cases. FERC does not challenge this court's jurisdiction, but states simply that while it adheres to the view that *Ohio Power* was wrongly decided, it considers itself estopped from advocating a result contrary to that reached by the D.C. Circuit.[3]

An issue similar to that presented here was addressed in *Public Service Co. of New Mexico v. FERC,* 857 F.2d 833 (D.C.Cir.), *reh'g en banc denied,* 863 F.2d 1021 (D.C.Cir. 1988), concerning successive rate challenges made by the city of Gallup, New Mexico. In the first two cases, Gallup raised on rehearing the issue ultimately advanced on appeal, and in the second of those two cases, FERC rejected the argument simply by citing its decision in the first case. In the third case, Gallup did not advance its position on rehearing, and argued that it would have been futile to do so. The original appellate panel excused Gallup's failure to exhaust on grounds of futility. 857 F.2d at 836. On application for rehearing en banc, seven of the eleven members of that court stated that futility alone did not excuse the city's failure to exhaust.

> If a party could withhold from FERC some or all of its claims, hoping for whatever reason to receive more sympathetic treatment in court if FERC has not first had an opportunity to fault them, then "FERC's complex and multi-party proceedings would soon overwhelm the system," and Congress's intention to commit to FERC rather than to the judiciary the interpretation and application of the laws regarding the generation and sale of energy would be seriously frustrated.

863 F.2d at 1023 (citation omitted). Rehearing en banc nonetheless was denied, and the original panel's reasonable ground finding not disturbed, because the case fell into one of those "extraordinary situations" in which FERC had changed its position after the events at issue to conform to the city's position. *Id.* at 1023.

▮▮▮ Thus, while futility alone may not constitute a reasonable ground for failing to raise an issue in the required application for rehearing, futility together with other extraordinary circumstances may excuse a party's failure. We think extraordinary circumstances exist here. This case, in FERC's words, is identical for all relevant purposes to its predecessor. The legal issues are the same, the utility whose rates are under attack is the same, and the customers, with

---

**3.** FERC's initial role is that of adjudicator, and it becomes a litigant only when it advocates its position on appeal. As the adjudicator of the MRSC's rate challenge, FERC was not a party to the case and was not estopped by its participation in the prior *Ohio Power* case from departing from the D.C. Circuit's decision. *Cf. Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co.,* 284 U.S. 370, 389, 52 S.Ct. 183, 186, 76 L.Ed. 348 (1932) (agency acting in judicial capacity not bound by res judicata). FERC's position as a party on appeal is different, however. "[T]o the extent preclusion analysis is appropriate at all, it is applicable to the extent that FERC participated as a party before the Eleventh Circuit." *Clark–Cowlitz Joint Operating Agency v. FERC,* 826 F.2d 1074, 1080 n. 5 (D.C.Cir.1987) (en banc), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988).

only one exception, are the same. No issues have been identified that would distinguish this case from its predecessor.[4] Thus, we need not be concerned that issues peculiar to this case have not had a full airing before FERC, and we are not faced with the risk identified by *Public Service Co. of New Mexico* that the party seeking appellate review has attempted to prevent FERC from having an opportunity to fault its claims prior to presenting them on appeal. More significantly, FERC has no interest in faulting the MRSC's claims because it is entirely sympathetic to them. At the point that the MRSC was required to apply for rehearing, FERC's substantive position was that the D.C. Circuit's opinion was wrong as a matter of law. Practically, however, it was bound by that opinion, by virtue of the fact that Ohio Power undoubtedly would have appealed any adverse decision to that court under FPA § 313(b), which permits an aggrieved party to seek review in either the D.C. Circuit or any circuit where the public utility is located or has its principal place of business.

This case thus presents the unusual situation in which FERC not only considered itself bound to apply a rule contrary to an applicant for rehearing, but had been working almost simultaneously with that applicant in another case to achieve the reversal of the rule. FPA § 313 expressly directs that we consider and excuse a failure to present issues in an application for rehearing when there is a reasonable ground for doing so.

We are confident that reasonable ground existed here. Finding no jurisdictional impediment, therefore, we turn to the merits.

## B. FERC's Ability to Disapprove Wholesale Rates Based on Affiliate Fuel Costs

The D.C. Circuit's opinion has inspired responses by FERC, Congress, commentators and, most recently, the SEC. FERC proposed a revision to its fuel cost regulation, and advocated statutory reform to address the court's reading of PUHCA § 13(b).[5] Congress considered amendments to authorize FERC to review and revise rates regardless of the SEC's prior approval of fuel prices, and also considered transferring regulatory authority under the PUHCA from the SEC to FERC.[6] Commentators have addressed these proposals, as well as the perceived wisdom of the D.C. Circuit's decision.[7] Additionally, the SEC has requested comment on the modernization of regulation of public utility holding companies, including the apportionment of responsibility between FERC and the SEC on rate and pricing reviews. Request for Comment, 59 Fed.Reg. 55573 (1994). The MRSC asks this court to weigh in on the controversy and reconsider each issue addressed by the D.C. Circuit. It is unnecessary, however, to engage in so broad a review.

■ FERC's regulation, 18 C.F.R. § 35.14(a)(7), applies to fuel cost adjustment

---

4. This identity of parties and issues forms the basis of Ohio Power's claim that the municipalities are barred by res judicata and collateral estoppel from relitigating issues decided against them in the original *Ohio Power* case. We decline to impose this procedural bar, principally because Ohio Power did not assert the contention before FERC. Res judicata and collateral estoppel are affirmative defenses which are waived if not timely asserted. Moreover, we are bound by the fundamental rule of administrative law that we must judge the propriety of agency action solely by the grounds invoked by the agency. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). Finally, we find no basis on which to conclude that the city of Clyde is bound by the other municipalities' litigation, there being no factual record suggesting that Clyde was involved in or represented in some fashion in the prior case.

5. 58 Fed.Reg. 51,259 (1993) (to be codified at 18 C.F.R. Part 35) (proposed Sept. 24, 1993); State-

ment of FERC Chair, Hon. Elizabeth Anne Moler, on "The Need for Legislation to Restore FERC's Authority to Protect Ratepayers Removed by the *Ohio Power* Decision," presented to Subcommittee on Energy and Power, Committee on Energy and Commerce, U.S. House of Representatives (May 26, 1994).

6. S.544, 103rd Cong., 1st Sess. (1993) *reprinted in* 139 Cong.Rec. S2640, S2683 (daily ed. Mar. 10, 1993). That bill has not yet been passed, but is under consideration as part of other legislation. 140 Cong. Rec. S15,065 (daily ed. Oct. 8, 1994) (statement of Sen. Bumpers).

7. Gary D. Levenson, *FERC–SEC Overlapping Jurisdiction and the Ohio Power Litigation: A Loss for Ratepayers*, 68 Ind.L.J. 1417 (1993); James W. Moeller, *Toward an SEC–FERC Memorandum of Understanding*, 15 Eng.L.J. 31 (1994).

clauses, the vehicle by which a utility may pass through, in its wholesale rates, increases or decreases in the cost of fuel without obtaining prior FERC approval. In pertinent part, the regulation provides:

> *Where the utility purchases fuel from a company-owned or controlled source, the price of which is subject to the jurisdiction of a regulatory body, such cost shall be deemed to be reasonable and includable in the adjustment clause.* ... With respect to the price of fuel purchases from company-owned or controlled sources pursuant to contracts which are not subject to regulatory authority, the utility company shall file such contracts and amendments thereto with the Commission for its acceptance at the time it files its fuel clause or modification thereof. Any subsequent amendment to such contracts shall likewise be filed with the Commission as a rate schedule change and may be subject to suspension under section 205 of the Federal Power Act. Fuel charges by affiliated companies which do not appear to be reasonable may result in the suspension of the fuel adjustment clause or cause an investigation thereof to be made by the Commission on its own motion under section 206 of the Federal Power Act.

(Emphasis added.) Ohio Power used a fuel adjustment clause to pass through the affiliate fuel costs challenged by the MRSC, and there is no dispute that the regulation applies to the costs at issue. The MRSC contend that the emphasized language is ambiguous, and that FERC's prior interpretation of the phrase "shall be deemed" to create only a rebuttable presumption of reasonableness should prevail. Additionally, the MRSC contend that this meaning of the language is supported by the last sentence of the regulation, which permits FERC to suspend fuel adjustment clauses or investigate fuel charges if the charges do not appear reasonable.

■ We find no ambiguity in the regulation, and are unpersuaded that the language "shall be deemed" means less than what it says. Courts construing the meaning of the word "deemed" when used in a statute have been nearly unanimous in concluding that a conclusive presumption is created. *Ohio Power Co.*, 954 F.2d at 783 (citing *H.P. Coffee Co. v. Reconstruction Finance Corp.*, 215 F.2d 818, 822 (Emer.Ct.App.1954), and collecting cases). Nor does the last sentence of the regulation create an ambiguity, in light of the fact that it follows two sentences limited to affiliate purchases which are "*not* subject to regulatory authority." 18 C.F.R. § 35.14(a)(7) (emphasis added). Simply put, the language at issue, when viewed both in isolation and in the context of the entire regulation, plainly creates a conclusive presumption. While in the ordinary case, considerable deference would be due to FERC's interpretation of the regulation, no such deference is due when an agency's interpretation is inconsistent with the regulation's terms. *University of Cincinnati v. Bowen*, 875 F.2d 1207, 1209 (6th Cir.1989). This is the situation here.

Finally, the MRSC contend that construing the highlighted language to create a conclusive presumption is inconsistent with FPA § 205(f), 16 U.S.C. § 824d(f), created by § 208 of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), Pub.L. 95–617, 92 Stat. 3117. FPA § 205(f) provides that FERC is to conduct periodic review of automatic adjustment clauses in public utility rate schedules, as well as practices under those clauses. The particular provision relied on by the MRSC is FPA § 205(f)(3):

> (3) The Commission may, on its own motion or upon complaint, after an opportunity for an evidentiary hearing, order a public utility to—
>
> (A) modify the terms and provisions of any automatic adjustment clause, or
>
> (B) cease any practice in connection with the clause,
>
> if such clause or practice does not result in the economical purchase and use of fuel, electric energy, or other items, the cost of which is included in any rate schedule under an automatic adjustment clause.

The MRSC did not seek a modification of Ohio Power's fuel adjustment clause as permitted by subsection (3), but contends that FERC's power to conduct a review and order such relief supports its view that FERC's regulation creates only a rebuttable pre-

sumption that affiliate fuel costs are reasonable. We disagree.

 The regulation at issue predated the enactment of FPA § 205(f) by four years, and cannot be interpreted in accordance with a statutory provision that was not in existence at the time the regulation was promulgated. More importantly, the regulation as interpreted herein is not on its face inconsistent with FPA § 205(f). FERC's statutory obligation to review utility practices and purchases to determine if they are economical must be read in connection with the FPA overriding requirement, undisturbed by PURPA, that wholesale power rates be "just and reasonable." FPA § 205(a), 16 U.S.C. § 824d(a). FERC's regulation in essence provides that as to one category of transactions subject to FPA § 205(f), i.e., prices applicable to purchases of fuel from affiliates which are subject to the jurisdiction of another regulatory body, FERC will defer to the other regulatory body and deem the price to be "reasonable" and includable. As stated by Judge Mikva in his concurrence in the first *Ohio Power* decision:

> Although, as a general matter, FERC may have the authority to make an independent determination of reasonableness, section 35.14(a)(7) forecloses such a route to the extent that the price is already subject to the jurisdiction of another regulatory body. In other words, section 35.14(a)(7) establishes, as a policy matter, that if another regulatory body has already passed on the fuel price, then FERC will abide by that determination. This reading is entirely consistent with the purpose of section 35.14(a)(7), which is to avoid unreasonable fuel costs between affiliated companies, for if another agency (e.g., the SEC) has already made that determination, then there is no reason for FERC to second-guess that decision.

*Ohio Power Co.*, 880 F.2d at 1414.

In sum, application of FERC's regulation requires the conclusion that Ohio Power's affiliate fuel costs, previously approved by the SEC, are reasonable and includable in Ohio Power's wholesale rates. Consequently, the MRSC's rate challenge properly was dismissed by FERC. Accordingly, we **DENY** the MRSC's petition for review.