**WASHINGTON ADVENTIST HOSPITAL INCORPORATED, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary Department of Health, Education & Welfare, Defendant.**

Civ. A. No. J–78–1272.

United States District Court, D. Maryland.

April 15, 1981.

Edward O. Clarke, Jr. and W. Gar Richlin, Baltimore, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty. and Gale E. Rasin, Asst. U. S. Atty., Baltimore, Md., for defendant.

SHIRLEY B. JONES, District Judge.

Plaintiff in this action seeks judicial review of a decision by the Secretary of the Department of Health, Education and Welfare (recently changed to Health and Human Services) disallowing reimbursement for certain expenses claimed under the Medicare program, 42 U.S.C. § 1395 *et seq.* Jurisdiction is pursuant to 42 U.S.C. § 1395 *oo*(f) and 5 U.S.C. § 701 *et seq.* Plaintiff is a nonprofit corporation which operates a short term hospital in Maryland. The hospital is a provider of services under the Medicare program as defined by 42 U.S.C. § 1395x(u) and (e). The costs for which it seeks reimbursement are related to its training program for nurses.

Prior to 1950, the hospital operated its own three-year training program for nurses. In 1950, the hospital entered into an agreement with Columbia Union College (the College) which is adjacent to the hospital, to establish a four-year baccalaureate program. Students in the program received their classroom training at the college and their clinical training at the hospital. Both the hospital and the college are associated with the Columbia Conference of Seventh-Day Adventists and several trustees of the college are also trustees of the hospital. By conducting the nurse's program through the college the hospital was able to reduce the costs of maintaining its own program.

In 1969, the hospital and the college entered into a written agreement relating to the conduct of the nursing program. Between 1955 and 1975, the hospital made annual payments to the college in support of the nursing program. It is the payments which were made in 1973 and 1974 which the Secretary has declined to reimburse. These payments amounted to approximately $70,000 a year. In 1975, the hospital ceased making payments to the college.

The initial decision disallowing payment for these expenses was made by the intermediary, Mutual of Omaha, who acted under contract as the Secretary's agent. Because the hospital's Medicare utilization rate was 33% in 1973 and 35% in 1974, the amounts which were in dispute were $23,429 for 1973 and $24,171 for 1974.

The hospital appealed the intermediary's decision to the Provider Reimbursement Review Board (P.R.R.B.) which reversed the intermediary. The P.R.R.B. permitted reimbursement based on the amount paid in 1967, which was $40,000, plus an inflation factor based on the consumer price index. Thus, reimbursement would be based on payments of $53,000 for 1973 and $60,000 for 1974.

The Administrator of the Health Care Financing Administration, *sua sponte*, reviewed the decision of the P.R.R.B. The Administrator reversed, holding that the payments in question were not reimbursable because they did not constitute educational costs as defined by 42 C.F.R. § 405.421(b)(1). This opinion constitutes the final decision of the Secretary from which plaintiff now appeals. Both parties have filed motions for summary judgment which the Court will now decide.

The Medicare program provides for the reimbursement of services rendered by providers on the basis of the "reasonable cost" of such services. Reasonable cost is defined by 42 U.S.C. § 1395x(v)(1)(A) as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health service...." The Secretary was directed to promulgate regulations which defined reasonable cost in greater detail.

In 42 C.F.R. § 405.421, the Secretary has provided for reimbursement for cost of approved educational activities. 42 C.F.R. § 405.421(b) defines approved educational activities as "formally organized or planned programs of study usually engaged in by providers in order to enhance the quality of patient care in an institution." The policy considerations behind reimbursement for education are set out in 42 C.F.R. § 405.421(c):

> (c) *Educational activities.* Many providers engage in educational activities including training programs for nurses, medical students, interns and resi-

dents, and various paramedical specialties. These programs contribute to the quality of patient care within an institution and are necessary to meet the community's needs for medical and paramedical personnel. It is recognized that the costs of such educational activities should be borne by the community. However, many communities have not assumed responsibility for financing these programs and it is necessary that support be provided by those purchasing health care. Until communities undertake to bear these costs, the program will participate appropriately in the support of these activities. Although the intent of the program is to share in the support of educational activities customarily or traditionally carried on by providers in conjunction with their operations, it is not intended that this program should participate in increased costs resulting from redistribution of costs from educational institutions or units to patient care institutions or units.

It is the Secretary's position that because the nursing program was not conducted on the hospital premises, that the hospital was not "engaged in" an educational activity within the meaning of the regulations. It is plaintiff's position that these costs do qualify under the regulations as reimbursable costs.

The scope of review of the Secretary's decision is defined in 5 U.S.C. § 706 and, accordingly, the Court must examine the Secretary's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or whether it was supported by substantial evidence.

■ The Secretary contends that the Court should accord his interpretation of the regulation deference because Congress has delegated to him the authority to prescribe standards defining what constitutes "reasonable cost." The Secretary also argues that because the case concerns interpretation of an administrative regulation,

his decision is also entitled to deference. The United States Court of Appeals for the Seventh Circuit spoke to this issue in *St. John's Hickey Memorial Hospital v. Califano,* 599 F.2d 803 (7th Cir. 1979). In that case, a hospital had been denied reimbursement for payments made to a college with which it was conducting a joint nursing education program. The Court held that the reasons for according the Secretary's decision deference were absent. The Secretary, as in this case, also relied on *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977), for the proposition that where the Secretary is expressly delegated the power to define a term and the Secretary's definition was reasonably related to the purpose of the statute, that his definition should be respected. The Court responded to this argument:

> ... It is not at all clear that the regulation as interpreted by the Bureau of Health Insurance is reasonably related to the purpose of the statute. The regulation has not been changed to incorporate its policy statement. Moreover, although the Secretary emphasizes that the Medicare statute delegates to him the task of defining "reasonable cost," in fact his authority to do so is significantly more circumscribed than was the authority delegated in *Batterton.* Finally, the statute specifically creates the right to judicial review of the Secretary's adverse ruling on what costs are reimbursable, thus reserving to the courts the final authority to interpret this aspect of the statute (42 U.S.C. § 1395oo(f)).

*St. John's Hickey Memorial Hospital v. Califano,* 599 F.2d 803, 813 (1979) (footnotes omitted). The Court finds the reasoning of *St. John's Hickey* persuasive on this issue and agrees that the Secretary's interpretation is not entitled to deference in this case.

■ Getting to the merits of the Secretary's interpretation of the regulation, the Court finds that it is both arbitrary and capricious and that its application to plaintiff was not supported by substantial evidence. The heart of the Secretary's argument is that "engaged in" as used in 42

C.F.R. § 405.421 is equivalent to "legal operator" and that because the hospital is not the "legal operator" of the program, that reimbursement was properly denied. The Court in *St. John's Hickey Memorial Hospital, supra,* rejected this same contention. The Court held the conclusion of P.R.R.B. that the requirement that the provider "engage in" an activity is not synonymous with being the legal operator. The same conclusion was reached by the United States District Court for the District of Nebraska in *The Archbishop Bergan Mercy Hospital v. Califano,* Civil Action No. 76–0–446 (May 23, 1980). An examination of the relevant regulations, the general purpose of the Medicare Program and the facts in this case, leads the Court to agree with the Court's holding in *St. John's Hickey Memorial Hospital.*

The regulation dealing with reimbursement for educational programs, 42 C.F.R. § 405.421(c) provides four basic criteria in order for educational costs to be reimbursable:

a. the education program must be approved,

b. the program must contribute to the quality of patient care within an institution,

c. until communities undertake to bear these costs, the program will participate appropriately in the support of these activities; and,

d. it is not intended that the program should participate in increased costs resulting from redistribution of costs from educational institutions to patient care institutions.

(Tr. 51). Nowhere in the regulation is there any requirement that the provider be the legal operator of the program. The record shows that the hospital is an integral part of the nurse's training program. The clinical training which the hospital provided was a condition for licensing by the National League for Nursing.

In his opinion reversing the decision of the P.R.R.B., the Administrator relied heavily on the fact that 42 C.F.R. § 405.421(c) states that the intent of the program is to "share in the support of educational activities *customarily or traditionally* carried on by providers in conjunction with their operations..." (emphasis added). Because hospitals traditionally operated in-house programs, it is reasoned that programs operated jointly with colleges were intended to be excluded. An examination of the statute belies such an interpretation. 42 U.S.C. § 1395x(v)(1)(A) speaks of "reasonable costs" in terms of those necessary in the "efficient delivery of needed health services." The record shows that the program conducted between the hospital and the college was more economical and provided for better trained nurses than the program conducted solely by the hospital. It seems clear from the general tenor of the statute that Congress did not intend that Medicare subsidize a more expensive, less efficient program simply because it was conducted wholly on the hospital's premises. Such an interpretation would also fly in the face of the prohibition of 42 U.S.C. § 1395x(v)(1)(A) that "the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered." To require non-medicare patients to bear solely the costs associated with this program would not be consistent with this policy.

■ As to the Secretary's application of the relevant regulation to the hospital, it was not supported by substantial evidence. The evidence overwhelmingly supports the hospital's contention that the costs associated with the nursing program are reimbursable. The previously enumerated criteria for reimbursement contained in 42 C.F.R. § 405.421(c) have been met by the hospital. The program is licensed by the National League for Nursing. There can be no question that the program has contributed to the quality of patient care within the hospital. The student nurses assisted the hospital's regular nursing staff providing more individualized care for each patient. The program also provided a source of well trained nurses for the hospital. The record shows that the hospital hired approximately

50% of the nurses in each graduating class. This is also an expense which the community has not chosen to undertake. Neither the hospital nor the college is supported by public funding and both are church organizations dependent upon church funding.

Finally, it cannot be asserted that these expenses resulted in any redistribution of costs from the college to the hospital. The college did not operate a nursing program prior to the hospital agreeing to transfer the classroom training to the college. Because the joint program resulted in lower costs than when the hospital conducted its own program, it can hardly be contended that the joint program resulted in redistribution of costs from the college to the hospital. If anything, the converse appears to be true.

The Secretary attempts to distinguish the relevant precedent of *St. John's Hickey Memorial Hospital, supra,* and *The Archbishop Bergan Mercy Hospital v. Califano,* Civil Action No. 76-0-446 (D.Neb. May 23, 1980), on the ground that those cases involved programs operated jointly between colleges and hospitals whereas the instant case does not. Suffice it to say that the evidence is no less compelling in this case, than in those cited, which supports the conclusion that the instant program was operated jointly between the college and the hospital.

Accordingly, because the Court finds that the expenses in question were reimbursable within the meaning of the regulations, a separate order will be entered granting plaintiff's motion for summary judgment.