**UNIVERSITY OF CINCINNATI, d/b/a University Hospital, Plaintiff–Appellant,**

v.

**Otis BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 88–3487.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1989.

Decided May 25, 1989.

Peter L. Cassady (argued), Cincinnati, Ohio, for plaintiff-appellant.

Donette D. Wiethe, Asst. U.S. Atty., Office of the U.S. Atty., Cincinnati, Ohio, Thomas Lewis Nelson, Office of the Gen. Counsel, Dept. of HHS, Stuart Silverman (argued), Washington, D.C., for defendant-appellee.

Before KENNEDY and JONES, Circuit Judges; and SILER, Chief District Judge.*

KENNEDY, Circuit Judge.

Plaintiff-appellant University Hospital (Hospital) appeals the District Court's grant of summary judgment to the Secretary of Health and Human Services (Secretary) in this Medicare reimbursement action. The Secretary disallowed the Hospital's costs for the payment of stipends and related overhead for the time residents spent working at two of its outpatient clinics as a required part of their approved residency programs. Plaintiff argues that the Secretary's interpretation of the applicable Medicare regulations is inconsistent with the regulations' plain language. Under plaintiff's view, its clinic costs are educational activities that need only "contribute to the quality of patient care within an institution," 42 C.F.R. § 405.421(c) (1982). The Secretary relies on the broader provision of 42 C.F.R. § 405.451 (1982), which

---

* The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky and United States District Judge for

the Western District of Kentucky, sitting by designation.

requires the cost of services to be "related to" the care of beneficiaries.

Because the Secretary's interpretation ignores the fact that section 405.451 is explicitly made subject to section 405.421, we find that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's interpretation of its regulations is not entitled to deference if that interpretation is inconsistent with the regulations' plain language. Accordingly, we reverse.

## I. Background

The University Hospital is operated by the University of Cincinnati, and is a provider of Medicare services under the Federal Health Insurance for the Aged and Disabled Act, 42 U.S.C. §§ 1395 *et seq.* As a provider, the Hospital is entitled to recover its reasonable costs of services provided to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A); *University of Cincinnati v. Heckler*, 733 F.2d 1171, 1172 (6th Cir. 1984). The costs of approved educational activities, such as stipends paid to residents and related overhead, are ordinarily included as reasonable costs. *See* 42 C.F.R. § 405.421 (1982).

In October 1982 and 1983, the Hospital submitted cost reports to a fiscal intermediary, to which the Secretary has delegated making the initial determination on reimbursement. *See* 42 U.S.C. § 1395h(a); *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 1257, 99 L.Ed.2d 460 (1988). The Hospital requested reimbursement for the costs of resident stipends and related overhead which it incurred during fiscal years 1982 and 1983 in which the residents trained at two of its outpatient clinics—the Family Practice Center (FPC) and the Central Psychiatric Clinic (CPC). Training at such outpatient clinics was a required part of an approved residency program in addition to the work at the Hospital.

The fiscal intermediary disallowed reimbursement for the costs of the stipends and related overhead because the costs were not "related to" the care of Hospital pa-

tients; clinic patients were not Hospital patients, and the clinics were not an administrative part (although they were a physical part) of the Hospital. The total amount disallowed for the two years was $355,850. The basis for the disallowance was 42 C.F.R. § 405.451, which requires that the costs be "related to the care of beneficiaries." In November 1986, the Provider Reimbursement Review Board (PRRB) upheld the intermediary's denial of reimbursement, and the Secretary adopted the PRRB's decision. This decision was in turn upheld by the District Court.

The facts of this case are not in dispute, and are cogently stated by the District Court:

The FPC and CPC are two clinics at which outpatients are treated and residents in the family practice and psychiatric residency programs obtain outpatient care education, which practice is recognized and acknowleged by the accrediting agencies. At the clinics the residents are engaged in both their own training and outpatient care. All of the residents at both clinics are Hospital residents as well and are paid stipends by the Hospital, and are trained and supervised by physicians and other health care professionals who are both faculty members at the University's College of Medicine and staff members at the Hospital. The clinics are jointly operated by the medical college and the Hospital in order to provide suitable outpatient setting for the Hospital's accredited educational programs in family practice and psychiatry. Furthermore, during [fiscal 1982 and 1983] both clinics were operated in buildings belonging to and also operated by the Hospital. However, during this period both clinics handled their own billing and the CPC had its own Medicaid number. The FPC did its own cost reporting unlike other clinics operated by the Hospital. Moreover, both of these clinics had separate registration procedures and medical records. During this same period, the costs of all other clinics in the Hospital were charged to the Hospital

directly unlike the procedure of the two clinics involved.

Joint Appendix (JA) 98. In addition to the above facts, we would add that the clinic patients were charged only for the supervising physician's services, and not for resident stipends or overhead.

## II. Analysis

The Medicare statute sets only broad definitional parameters requiring the Secretary to reimburse providers for the reasonable cost of providing services to Medicare beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A); *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 325 (5th Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). The validity of the Secretary's regulations to determine reasonable costs under the statute are not in question. Rather, this case turns on whether the Secretary's interpretation of two of its regulations, 42 C.F.R. § 405.451 (1982) and § 405.421 (1982), is inconsistent with the terms of those regulations.

### A. Standard of Review

The standard of review is governed by 42 U.S.C. § 1395*oo* (f), which provides that actions by the Secretary and its PRRB are to be evaluated under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). *See, e.g., University of Cincinnati v. Heckler*, 733 F.2d at 1173. Under the APA, we must determine whether the Secretary's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *Id.*

█ The law is well-settled that in cases involving conflicting interpretations of administrative regulations, we will give considerable deference to the admistrative agency's interpretation. *See, e.g., Navistar Int'l Transp. Corp. v. EPA*, 858 F.2d 282, 286 (6th Cir.1988); *Fluor Constructors, Inc. v. Occupational Safety & Health Review Comm'n*, 861 F.2d 936, 939 (6th Cir.1988); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). This rule is not absolute, however. "[A]n administrative agency's interpretation of its own regulation is accorded considerable

deference on judicial review *unless it is inconsistent with the terms of the regulation...." University of Cincinnati v. Heckler*, 733 F.2d at 1173–74 (emphasis added); *Navistar*, 855 F.2d at 286 (citing *University of Cincinnati*). *See Fluor Constructors*, 861 F.2d at 939 ("An agency's interpretation of a regulation is valid, however, only if that interpretation complies with the actual language of the regulation."); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987) (substantial deference unless agency action is inconsistent with the regulation). *See also Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1310–11 (D.C.Cir.1984) (deference is appropriate only if the agency's interpretation "does no violence to the plain meaning of the provision").

The key " 'question for this court ... is not whose interpretation of the statute we prefer,' but whether we are persuaded that the Secretary's interpretation is reasonable and consistent with the regulation's language." *Davis v. Secretary of Health & Human Servs.*, 867 F.2d 336, 339 (6th Cir. 1989) (quoting *Whiteside v. Secretary of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir.1987)). To answer this question, we must examine the language of the applicable regulations.

### B. Medicare Regulations

The two Medicare regulations applicable to this case read as follows:

§ 405.451 **Cost related to patient care:**

(a) *Principle.* All payments to providers of services must be based on the reasonable cost of services covered under title XVIII of the Act and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs incurred in rendering the services, *subject to principles relating to specific items of revenue and cost.* (Emphasis added.)

§ 405.421 **Cost of educational activities.**

(a) A provider's allowable cost may include its net cost of approved educational activities,....

(b) *Definition—Approved educational activities.* Approved educational activities means formally organized or planned programs of study usually engaged in by providers in order to enhance the quality of patient care in an institution. These activities must be licensed where required by State law. Where licensing is not required, the institution must receive approval from the recognized national professional organization for the particular activity.

(c) *Educational activities.* Many providers engage in educational activities including training programs for nurses, medical students, interns and residents, and various paramedical specialties. These programs contribute to the quality of patient care within an institution and are necessary to meet the community's needs for medical and paramedical personnel. It is recognized that the costs of such educational activities should be borne by the community. However, many communities have not assumed responsibility for financing these programs and it is necessary that support be provided by those purchasing health care. Until communities undertake to bear these costs, the program will participate appropriately in the support of these activities. Although the intent of the program is to share in the support of educational activities customarily or traditionally carried on by providers in conjunction with their operations, it is not intended that this program should participate in increased costs resulting from redistribution of costs from educational institutions or units to patient care institutions or units.

. . . .

(e) *Approved Programs.* [The regulation refers to approved residency programs under § 405.116(f), which includes teaching programs approved by the Council on Medical Education].

In sum, to be reimbursable under the plain language of the Medicare regulations, educational activities must (1) be approved programs; (2) contribute to the quality of patient care within an institution; and (3) not redistribute costs from educational to pa-

tient care institutions. We find that the Hospital has satisfied these criteria.

C. Satisfaction of Education Cost Criteria for Reimbursement

1. Approved Programs

The satisfaction of the first criterion, approval, is not in dispute. Both the FPC and CPC are part of accredited residency programs by the Accreditation Council for Graduate Medical Education. *See* 42 C.F.R. § 405.116(f). Accreditation of the Hospital's programs requires clinical experience to supplement inpatient care and training. The clinics are part of planned, integrated programs of study in which hospital residents spend part of their time at the clinic with outpatients, and spend the remaining time rotating through several areas of the Hospital working with inpatients. Their clinic instructors hold joint positions in both the Medical College and as Hospital staff members.

2. Contribute to the Quality of Patient Care within the Institution

■ The second criterion is the central point of contention between the Secretary and the Hospital. The Secretary denied reimbursement because the outpatient clinic patients were not Hospital patients, and therefore clinic costs, including resident stipends and overhead, did not "relate to" patient care for the Hospital's medicare patients. Both the PRRB and the District Court accepted the line of reasoning that, under section 405.421, the education programs must "relate to '... patient care within an institution.'" PRRB decision at JA 91; District Court decision at JA 99. The District Court accorded deference to the Secretary's interpretation of its regulations, found the interpretation to be reasonable, and likewise found that the Hospital's interpretation was "strained."

We cannot accept the District Court's conclusions; it is the Secretary's interpretation which is strained. The Secretary juxtaposes the "related to" language of section 405.451 and the "patient care within an institution" language of section 405.-421(c) in a way that destroys the regula-

tions' plain meaning. It is not reasonable to focus on the general requirement in section 405.451(a) that the costs of services be "related to the care of beneficiaries," while essentially ignoring the proviso of that section that it is "subject to principles relating to specific items of revenue and cost." One of the "costs" that section 405.451 is "subject to" is the "cost of educational activities" in section 405.421.

The plain meaning of the regulations does not require residents to *directly* perform services for Hospital patients to the exclusion of clinic patients as part of their *educational activities.* Section 405.421(c) states, "Many providers engage in educational activities including training programs for [residents]. These programs *contribute to the quality of patient care within an institution ....*" (Emphasis added.) Section 405.421 requires only that the educational programs *contribute* to the quality of care of the Hospital's medicare patients. Given that the outpatient clinic programs are accredited programs required as a part of the residents' training, they *ipso facto* contribute to the quality of care received by the Hospital's Medicare patients. The skills and training received by the residents in the clinics are transferred back to the Medicare patients during the residents' rotation within the Hospital.

The Secretary argues that its interpretation of the regulations is buttressed by the "clarification" provided in its Part B Carriers Manual § 2020.8, Secretary's Brief at Addendum I. The manual refers to reimbursement for services rendered which are a "part of" the provider. This "clarification" is of no help, however, given that the plain language of section 405.421 does not restrict educational activities to a provider's patients, nor does it require that such activities are reimbursable only for services rendered in a facility which is physically and/or administratively a part of a provider. The Secretary's argument fails for the simple reason that section 405.421(c) only requires educational "activities" that ultimately enhance the quality of Medicare patient care, not direct "services" to those patients. The regulations are therefore satisfied as long as the residents return to the provider from their clinical training to render enhanced services to its Medicare patients.

The Secretary makes a second argument in support of its interpretation requiring that, during fiscal 1982 and 1983, care be provided by a "part of" the Hospital through reference to the legislative history of subsequent amendments to the Act. The Omnibus Budget Reconciliation Act of 1986 (OBRA) amended 42 U.S.C. § 1395ww(h)(4) to require that, effective July 1, 1987, the time spent by a resident in outpatient settings pursuant to an approved training program would be counted "without regard to the setting in which the activities are performed, if the hospital incurs all, or substantially all, of the costs for the training program in that setting." The Secretary points out that the Conference Report states that under the then-present law, "Time spent by residents out of the inpatient setting is counted for this purposes [sic] only if the setting is part of the hospital." H.R.Rep. No. 1012, 99th Cong., 2d Sess. 311, *reprinted in* 1986 U.S. Code Cong. & Admin.News 3868, 3956. Because the amendment is itself an amendment to the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99–272, § 9202 (COBRA) (adding 42 U.S.C. § 1395ww(h)), and COBRA did not address "patient settings," the Secretary concludes that the 1986 OBRA must be referring to law existing during 1982 and 1983.

We cannot accept the Secretary's legislative history argument. Neither the Secretary nor the Conference Report have identified any statutory or regulatory language during the relevant time period (1982–1983) specifying the "part of" requirement. In fact, there was no statutory language specifically addressing reimbursement for graduate medical education until the 1985 COBRA. Thus, the only relevant language regarding educational program reimbursement for 1982–1983 is found in the Secretary's own regulations, which clearly have no "part of" requirement. Furthermore, Congress itself indicated that there was some confusion over the "part of" requirement, discussing the fact that reimburse-

ment should be without regard to the setting of the program in OBRA's legislative history under the heading, *"Clarifying counting of time spent in outpatient settings."* 1986 U.S.Code Cong. & Admin. News at 3956–57. (Emphasis added.) In sum, the 1985–1986 amendments and legislative history do not support the Secretary's position that the "part of" requirement was established law during 1982–1983.

Because the plain language of the regulations does not require that the educational activities provide direct services to Medicare beneficiaries within the institution, there are additional issues which we need not address. First, we need not reach the issue of whether substantial evidence supports the Secretary's *factual findings* as to whether Medicare beneficiaries received the residents' services during their clinical training, or whether the clinics are a "part of" the Hospital, such findings are not determinative. *See* District Court opinion, JA 97 (substantial evidence review of Secretary's findings of fact). Second, it is not necessary to distinguish the cases cited below in support of the Secretary's position which focus on whether certain education programs enhance the quality of patient care *at the hospital* through the provision of *direct services* to Medicare beneficiaries. Those cases are not helpful in deciding whether educational activities not so limited are entitled to Medicare reimbursement under the regulations. *See St. John's Hickey Memorial Hospital, Inc. v. Califano,* 599 F.2d 803 (7th Cir.1979); *Washington Adventist Hospital, Inc. v. Califano,* 512 F.Supp. 932 (D.Md.1981).

### 3. No Impermissible Cost Shifting

The third criterion, preventing the improper shifting of costs from educational to patient care institutions, is also met. By reimbursing the Hospital for the portion of clinic training which the residents receive and pass on to their Hospital Medicare patients in terms of enhanced quality of service, costs are *properly* shifted to the patient care institution and its Medicare beneficiaries. This comports with the underlying statute, 42 U.S.C. § 1395x(v)(1)(A),

which prohibits shifting necessary direct or indirect costs of providing services from Medicare beneficiaries to non-Medicare beneficiaries. Therefore, by allocating a proper amount of the clinic costs to the Medicare Program, it has not "participate[d] in increased costs resulting from redistribution of costs from educational institutions to patient care institutions." 42 C.F.R. § 405.421(c) (1982). The Hospital seeks only reimbursement for the *allocable* share of costs, *i.e.,* the costs equal to the proportion of Medicare patients at the Hospital relative to the Hospital population. *See* 42 C.F.R. § 405.402(a) (1982).

### III. Conclusion

Because the Secretary's interpretation is inconsistent with the plain meaning of its Medicare regulations, it is not entitled to deference. We therefore hold that the Secretary's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, the District Court's grant of summary judgment to the Secretary is REVERSED. The case is REMANDED to the Secretary to determine the appropriate apportionment of the clinic costs for Medicare reimbursement.